Jeffrey Chubak
AMINI LLC
116 West 23rd Street, Suite 500
New York, New York 10011
(212) 497-8247
jchubak@aminillc.com
- and -
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
FRANKGECKER LLP
1327 West Washington Boulevard, Suite 5G-H
Chicago, Illinois 60607
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com
*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 15-23007-RDD <br><br> Jointly Administered |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PEPSICO, INC., *et al.*, <br><br> Defendants. | Adv. Proc. No. 18-08245-RDD <br><br> **MEMORANDUM OF LAW** <br> **IN SUPPORT OF DEFENDANTS'** <br> **MOTION FOR LEAVE TO APPEAL** |

---

[1] The Debtors are: 2008 Broadway, Inc.; The Great Atlantic & Pacific Tea Company, Inc.; A&P Live Better, LLC; A&P Real Property, LLC; APW Supermarket Corporation; APW Supermarkets, Inc.; Borman's, Inc.; Delaware County Dairies, Inc.; Food Basics, Inc.; Kwik Save Inc.; McLean Avenue Plaza Corp.; Montvale Holdings, Inc.; Montvale-Para Holdings, Inc.; Onpoint, Inc.; Pathmark Stores, Inc.; Plainbridge LLC; Shopwell, Inc.; Super Fresh Food Markets, Inc.; The Old Wine Emporium of Westport, Inc.; Tradewell Foods of Conn., Inc.; and Waldbaum, Inc. (together, the "Debtors").

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

RELIEF SOUGHT ..... 1

FACTS NECESSARY TO UNDERSTAND QUESTIONS PRESENTED ..... 1

QUESTIONS PRESENTED ..... 3

REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED ..... 4

I. STANDARD FOR INTERLOCUTORY APPEAL ..... 4

II. THE REQUIREMENTS OF 28 U.S.C. § 1292(b) ARE SATISFIED ..... 5

A. First and Third Elements ..... 5

B. Second Element ..... 8

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Jundi v. Estate of Rockefeller*,
  757 F. Supp. 206 (W.D.N.Y. 2000) ................................................................................ 7

*Andy Warhol Found. for Visual Arts v. Fed. Ins. Co.*,
  189 F.3d 208 (2nd Cir. 1999) ....................................................................................... 10

*Certain Underwriters at Lloyd's of London v. Illinois Nat. Ins. Co.*,
  No. 09-cv-4418, 2013 WL 310383 (S.D.N.Y. Jan. 25, 2013) ...................................... 5

*Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*,
  262 F.3d 96 (2d Cir. 2001) ............................................................................................ 8

*In re Facebook, Inc. IPO Secs. and Deriv. Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014) ........................................................................... 6

*Flor v. BOT Fin. Corp. (In re Flor)*,
  79 F.3d 281 (2d Cir. 1996) ............................................................................................ 5

*Glatt v. Fox Searchlight Pictures Inc.*,
  No. 11-cv-6784, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) .................................. 6

*Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*,
  310 F.3d 64 (2d Cir. 2002) ............................................................................................ 8

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ........................................................................................ 5, 6

*Lehman Brothers Special Financing Inc. v. BNY Corp. Trustee Servs. Ltd. (In re Lehman Brothers Holdings Inc.)*,
  422 B.R. 403 (S.D.N.Y. 2009) ................................................................................. 4, 5

*Mills v. Everest Reinsurance Co.*,
  771 F.Supp.2d 270 (S.D.N.Y. 2009) ............................................................................. 5

*Official Comm. of Equity Security Holders of Adelphia Communications Corp. v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*,
  371 B.R. 660 (S.D.N.Y. 2007) .................................................................................. 8, 9

*Official Comm. of Equity Security Holders of Adelphia Communications Corp. v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*,
  544 F.3d 420 (2d Cir. 2008) .......................................................................................... 9

*Smart World Technologies v. Juno Online Services, Inc. (In re Smart World Technologies, Inc.)*,
  423 F.3d 166 (2d Cir. 2005) .................................................................................. 4, 9

*SEC v. Credit Bancorp, Ltd.*,
  103 F. Supp. 2d 223 (S.D.N.Y. 2000) ......................................................................... 6

*SIPC v. Bernard L. Madoff Inv. Securities LLC*,
  No. 11-mc-285, 2011 WL 6057927 (S.D.N.Y. Dec. 6, 2011) ..................................... 4

*Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*,
  779 F.2d 901 (2d Cir. 1985) .................................................................................. 8, 9

**Statutes**

11 U.S.C. § 546 ............................................................................................................ 1, 4

11 U.S.C. § 1102 ............................................................................................................... 1

11 U.S.C. § 1103 ........................................................................................................... 3, 8

11 U.S.C. § 1106 ............................................................................................................... 3

11 U.S.C. § 1107 ............................................................................................................... 3

11 U.S.C. § 1109 ............................................................................................................... 8

28 U.S.C. § 158 ................................................................................................................. 1

28 U.S.C. § 1292 ........................................................................................................... 4, 5

**Rules**

Fed. R. Bankr. P. 8004 ..................................................................................................... 3

**RELIEF SOUGHT**

Defendants PepsiCo, Inc., Bottling Group, LLC (d/b/a Pepsi Beverages Company and f/d/b/a The Pepsi Bottling Group), Frito-Lay North America, Inc., Quaker Sales and Distribution, Inc., and Muller Quaker Dairy, LLC (together, "Pepsi") submit this memorandum of law in support of their motion for leave to appeal the Order of the Bankruptcy Court, entered January 2, 2020, denying Pepsi's motion for summary judgment on Counts One through Four of the Debtors' Second Amended Complaint ("SAC"), pursuant to 28 U.S.C. § 158(a).

**FACTS NECESSARY TO UNDERSTAND QUESTIONS PRESENTED**

By the summary judgment motion, Pepsi argued Counts One through Four of the SAC were time-barred by the statute of limitations set forth in 11 U.S.C. § 546 ("§ 546"), because § 546 was not tolled for the Debtors by a series of five tolling agreements ("Tolling Agreements") negotiated, entered into, and executed only by Pepsi and the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases pursuant to Bankruptcy Code section 1102(a)(1) ("Committee"), copies of which are annexed to the accompanying Declaration of Joseph D. Frank ("Frank Decl.") as consolidated Ex. 1.

The Bankruptcy Court denied the motion by construing a single line of the Tolling Agreements to expand their enforcement beyond the parties that are specifically identified as being entitled to enforce the agreements. (December 17, 2019 Hr'g Tr. (Frank Decl. Ex. 2, cited herein as "Tr.") 22:2-18 (concluding that the Tolling Agreements tolled the time to bring the estates' causes of action rather than a party's right to bring them within a certain time).) This ruling erroneously relied on the Debtors and Committee's concurrent standing to pursue causes of action to transform a tolling agreement between Pepsi and the Committee into an agreement to toll the statute of limitations generally with respect to those causes of action, regardless of what party brings them.

1

The Bankruptcy Court reached this conclusion despite finding Pepsi's summary judgment motion persuasive in large part:

- "I agree with a lot of the movant's analysis of this issue, starting with the proposition that one should read the tolling agreement."

- "I might well buy the argument, because the plain language really -- action brought by the committee. The committee must commence. You know, those are focused right on the committee. . . ."

(Tr. 9:13-15, 13:5-8).

However, the Bankruptcy Court further found that the purpose of the Tolling Agreements was to allow time for settlement, and that any settlement of the adversary proceeding would require, among other things, the Debtors' approval. (Tr. 11:7-22.) Furthermore, the Bankruptcy Court posited that because the Debtors also had standing to bring those causes of action, the Debtors might need an alternative means to pursue the claims if the Committee refused to prosecute them. (*E.g.*, Tr. 20:19-23.) On those bases and their relationship to a single line of the Tolling Agreements, the Court extended the benefits of the Tolling Agreements to the non-party Debtors.

The Bankruptcy Court reached its decision in part by focusing on only the first three-quarters of the sentence it referred to as the most important part of the Tolling Agreements, "the operative tolling paragraph" (Tr. 10:3-4), found at § 2 of each Tolling Agreement. In so doing, the Bankruptcy Court reached the erroneous conclusion that what the Committee could do, the Debtors could also do. In other words, the Bankruptcy Court found that, because the Debtors and the Committee had concurrent standing to bring the estates' claims, § 2 of the Tolling Agreements tolled the time to bring the ***claims***, and not the ***Committee's time to bring them***. (Tr. 13:14-14:11 (emphasis added).)

2

Nevertheless, the Bankruptcy Court overlooked the distinct and separate legal identities of the Debtors and the Committee and ignored the final section of the first sentence of § 2 of the Tolling Agreements, which excludes the Tolling Period[2] from "any calculation of any statute of limitations period applicable to any Cause(s) of Action brought *by the Committee* against [Pepsi]." (Tolling Agreements § 2 (emphasis added).)  No matter how many causes of action the Tolling Agreements may include (*see* Tr. 13:16-20 ("It's 'may bring.' So the agreement applies to all of those types of causes of action that the committee has standing to bring, but it's tied to the causes of action as opposed to the committee, and they're ultimately the estate's causes of action")), the Tolling Agreements exclude the ***Tolling Period*** from the calculation of the statute of limitations only as to causes of action ***brought by the Committee***.  The Bankruptcy Court erred by equating the Debtors with the Committee with respect to the estates' causes of action, and thereby excluded the Tolling Period from the calculation of the statute of limitations as to a cause of action brought by ***the Debtor,*** extending a right to the Debtors that Pepsi agreed to extend only to the Committee.

In accordance with Rule 8004(b)(1)(E), the Order being appealed is included herewith. (Frank Decl. Ex. 3.)

## QUESTIONS PRESENTED

(1) Whether, as a matter of first impression, a debtor and an official committee with court-approved concurrent standing, each an independent legal entity with distinct statutory duties under the Bankruptcy Code (*cf.* 11 U.S.C. § 1103 with 11 U.S.C. § 1106-07), should be considered one or the same legal entity when negotiating or contracting with third parties, so that third parties

---

[2] Defined in each Tolling Agreement as the date the given Tolling Agreement became effective through the final date covered by the given Tolling Agreement. For example, the final Tolling Agreement defines the term "Tolling Period" as "the Commencement Date through and including April 16, 2018."

dealing with either separately may fairly be charged with the knowledge they are actually dealing with both as counterparties;

(2) whether, as a matter of first impression, the benefits of a contract negotiated, entered into, and executed solely between (a) an official committee that has, with the Debtor's consent, gained court-approved standing, concurrent with the debtor, to bring estate causes of action and (b) a defendant to such a cause, may be extended to the debtor in lieu of the contracting party-committee, over the objections of the contracting party-defendant; and

(3) whether the Bankruptcy Court erred in applying the holding of *Smart World Technologies v. Juno Online Services, Inc. (In re Smart World Technologies, Inc.)*, 423 F.3d 166 (2d Cir. 2005), that the doctrine of derivative standing did not entitle a creditor to settle an estate cause of action over the debtor's objections (*id.* at 180), to construe the Tolling Agreements to toll the statute of limitations set forth in § 546 for the Debtors, based on the Debtors' concurrent standing with the Committee.

## REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED

**I.    STANDARD FOR INTERLOCUTORY APPEAL**

Courts in this District apply the standard under 28 U.S.C. § 1292(b) ("§ 1292(b)") in evaluating motions for leave to take an interlocutory appeal of an order of the Bankruptcy Court. *Lehman Brothers Special Financing Inc. v. BNY Corp. Trustee Servs. Ltd. (In re Lehman Brothers Holdings Inc.)*, 422 B.R. 403, 405 (S.D.N.Y. 2009).

Under this standard, the movant must demonstrate that three conditions have been met: (1) the order in question involves a controlling question of law; (2) the order contains substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *SIPC v. Bernard L. Madoff Inv. Securities LLC*, No. 11-mc-285, 2011 WL 6057927, at *4 (S.D.N.Y. Dec. 6, 2011).

A controlling question of law is a pure legal question that the reviewing court could decide quickly and cleanly without having to study the record. The question on interlocutory appeal must also be controlling in the sense that reversal of the bankruptcy court's order would terminate the action, or determination of the question "would materially affect the litigation's outcome." *Lehman Brothers*, 422 B.R. at 406 (citations and quotations omitted).

Substantial grounds for difference of opinion exist where there is conflicting authority on the issue or the issue is particularly difficult and one of first impression in the Second Circuit. *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990); *Certain Underwriters at Lloyd's of London v. Illinois Nat. Ins. Co.*, No. 09-cv-4418, 2013 WL 310383, at * 1 (S.D.N.Y. Jan. 25, 2013) (finding substantial grounds for difference of opinion regarding interpretation of precedential opinion). The reviewing judge has the duty to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute. *Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996) (emphasis in original).

The third element is met where an intermediate appeal would advance the ultimate termination of a litigation or if the appeal would advance the time to trial or shorten the trial. *Mills v. Everest Reinsurance Co.*, 771 F.Supp.2d 270, 274 (S.D.N.Y. 2009). The third prong is satisfied by a showing that the time and expense of discovery and trial would be avoided by a successful appeal. *Certain Underwriters at Lloyd's*, 2013 WL 310383, at *2.

## II.   THE REQUIREMENTS OF 28 U.S.C. § 1292(b) ARE SATISFIED

### A.   First and Third Elements

In determining whether a controlling question of law exists, "the court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the

5

conduct of the action; or, the certified issue has precedential value for a large number of cases." *In re Facebook, Inc. IPO Secs. and Deriv. Litig.*, 986 F. Supp. 2d 524, 535-36 (S.D.N.Y. 2014) (quoting *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-cv-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)). The impact an appeal will have on other cases need not be large, but it "is a factor that [the court] may take into account." *Facebook*, 986 F. Supp. 2d 536 (quoting *Klinghoffer,* 921 F.2d at 24). "Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000).

In this case, this Court can decide quickly and cleanly whether the benefits of the Tolling Agreements should be extended to the Debtors as a matter of law. The Tolling Agreements were undisputedly negotiated, entered into, and executed solely between Pepsi and the Committee. This Court does not have to review the record or any evidence other than the Tolling Agreements themselves to decide whether there is any legitimate reason to extend their reach to the non-party Debtors.

A reversal of the Bankruptcy Court's decision will significantly affect the conduct of the action by terminating Counts One through Four of the SAC. Those counts are the only counts brought under the Bankruptcy Code and represent roughly 72% of the value the Debtors seek to recover in the SAC. (Frank Decl. Ex. 4.) Furthermore, those causes of action involve thousands of payments, covering tens of thousands of invoices. The termination of Counts One through Four will leave for trial only contract and quasi-contract issues involving entirely different transactions. Termination will eliminate the need for fact and expert discovery on Counts One through Four and shorten the time and expense required of both the Debtors and Pepsi to conclude trial. On the other

6

hand, to delay this appeal until the action's ultimate conclusion will cause Pepsi and the Debtors to incur the time and expense involved in trial of counts that are arguably time-barred.

Immediate appeal will also provide much-needed finality regarding Counts One through Four of the SAC. Pepsi has already spent 21 months in efforts to resolve and defend against the counts that now are arguably time barred. Interlocutory review could avoid, at minimum, additional motions for summary judgment both on (1) the merits, *i.e.*, the factual bases of the preference claims asserted against Pepsi, and (2) legal issues, *i.e.*, the interplay between different sections of the Bankruptcy Code; as well as a protracted trial involving thousands of transactions and multiple expert witnesses as well as fact witnesses, if those motions are not granted. For the reasons discussed herein, there is a high probability that the Bankruptcy Court erred by extending the benefits of the Tolling Agreements between Pepsi and the Committee to permit the Debtors' time-barred SAC, based ultimately on the Committee's court-approved, concurrent standing to bring the estate's causes of action. Resolution of this issue will materially advance the litigation because "doing so now rather than after a lengthy trial would be most saving of the time and efforts of all." *Al-Jundi v. Estate of Rockefeller*, 757 F. Supp. 206, 208 (W.D.N.Y. 2000). Here, addressing an appeal prior to trial is particularly important in light of the fact that the Debtors are administratively insolvent, holding insufficient funds to pay post-bankruptcy fees and expenses in full. The additional funds spent litigating Counts One through Four prior to any appellate review will further deplete any distribution that Pepsi, Frito and all of the Debtors other administrative creditors (other than professionals) will receive on their claims.

A reversal of the Bankruptcy Court's decision will also affect future litigants by clearly defining the boundaries of the relationship between a debtor in possession and an official committee with court-approved concurrent standing to bring a bankruptcy estate's causes of action.

7

As this Circuit's doctrine of court-approved standing expands (*see infra*), debtors, official committees, and defendants should be able to proceed with certainty as to the identities of their counterparties when negotiating and entering into contracts.

### B.  Second Element

The very need for this Motion and the procedural history of this adversary proceeding indicate that there is substantial confusion over the roles, rights, and duties of debtors in possession and official committees (or other entities) with court-approved standing to bring estate causes of action under this Circuit's so-called "*STN Trilogy*," a line of decisions granting court authority for creditors or committees to act on a bankruptcy estate's causes of action. *See Official Comm. of Equity Security Holders of Adelphia Communications Corp. v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 371 B.R. 660, 666 (S.D.N.Y. 2007) (tracing the development of creditor standing and giving the name "*STN Trilogy*" to the three seminal cases). In the first case of the trilogy, *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*, the court held that, while the Bankruptcy Code makes no specific provision for creditor standing, 11 U.S.C. §§ 1103(c)(5) and 1109(b) allow a court to grant standing where the debtor has unjustifiably failed to bring suit. 779 F.2d 901, 904-05 (2d Cir. 1985). Building on *STN*, the court in the second case, *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, held that an official committee may also sue on the estate's causes of action where the debtor in possession or trustee consents.  262 F.3d 96, 100 (2d Cir. 2001). Finally, in *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, the court held that an official committee may sue on an estate's causes of action as a co-plaintiff with a trustee or debtor in possession. 310 F.3d 64, 70-71 (2d Cir. 2002).

In this adversary proceeding, the Committee's standing to bring estate actions is not at issue. The Committee has concurrent standing with the Debtors by the Debtors' consent as set forth in the Debtors' Global Settlement Agreement and approved by the Bankruptcy Court. (Tolling Agreements, Second Recital Paragraph.)  Rather, the question is whether concurrent standing, which allows either the Committee or the Debtors to act for the benefit of the estates, means that an action taken by only one of them automatically binds or benefits both. Are the Debtors and the Committee interchangeable in these circumstances? Specifically, did the Tolling Agreements, negotiated, entered into and executed solely between Pepsi and the Committee automatically benefit the Debtors merely because they tolled statutes of limitations applicable to estate causes of action brought by the Committee? (*See* Tolling Agreements § 2 (excluding the Tolling Period from "any calculation of any statute of limitations period applicable to any Cause(s) of Action brought by the Committee against [Pepsi]")).

No opinion in the *STN Trilogy*, or any subsequent case in the Second Circuit, holds that a debtor and an official committee become legally or functionally equivalent once the committee has been granted standing to pursue estate causes of action. *Housecraft* strongly suggests the opposite—there would be no reason to have co-plaintiffs if each plaintiff were merely standing in the shoes of the other plaintiff. In *Adelphia*, the Second Circuit carefully distinguished a creditor with court-approved standing from the debtor in possession to affirm a decision to revoke the creditor's standing. 544 F.3d 420, 424-25, *aff'g* 371 B.R. 660.  Even *Smart World*,[3] on which the Bankruptcy Court relied to bring the Debtors under the protection of the Tolling Agreements (*see* Tr. 21:20-22:18), is based entirely on the distinctions between a debtor and a creditor pursuing

---

[3] *Smart World* is tangentially related to the *STN Trilogy*. The *Smart World* court held that, in the circumstances presented, a creditor could not settle an estate cause of action over the debtor's objections. 423 F.3d at 177.

estate causes of action. *See* 423 F.3d at 174-176 (discussing the differences between a debtor in possession and a creditor with court-approved standing in the context of a Fed. R. Bankr. P. 9019 motion).

No court in the Second Circuit has addressed the question of whether, outside of an actual settlement, the actions of an official committee having concurrent standing with a debtor bind or benefit the debtor, based solely on the common interest in the estate's causes of action.[4] An interlocutory appeal should be granted because there are substantial grounds for differences of opinion on this difficult issue. This adversary proceeding involves sophisticated business entities represented by experienced counsel and has still resulted in this level of litigation. The Committee, comprised of sophisticated business entities represented by experienced counsel, while not party to the adversary proceeding, has unquestionably contributed to the confusion. Even the Bankruptcy Court entered the Order based on its own reasoning, rather than arguments advanced by either party. Thus, there are at least three different ways to resolve the question, and both present and future courts and litigants will benefit from an appellate decision.

---

[4] Outside of the bankruptcy context, the Second Circuit has held that a holder of concurrent rights against a common defendant should not be benefited by a tolling agreement solely between the defendant and the other plaintiff. *Andy Warhol Found. for Visual Arts v. Fed. Ins. Co.*, 189 F.3d 208 (2nd Cir. 1999). Although Pepsi discussed *Warhol* in its motion below, neither the Debtors nor the Bankruptcy Court considered the case.

## CONCLUSION

For all the foregoing reasons, Pepsi respectfully requests that this Court grant leave to appeal the Bankruptcy Court's decision denying its summary judgment motion and extending the benefits of the Tolling Agreements to the Debtors.

Dated: January 16, 2020

Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak
AMINI LLC
116 West 23rd Street, Suite 500
New York, New York 10011
(212) 497-8247
jchubak@aminillc.com
- and -
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
FRANKGECKER LLP
1327 West Washington Boulevard, Suite 5G-H
Chicago, Illinois 60607
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com
*Attorneys for the Defendants*