**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Philip J. Duffy, Esq.
David N. Crapo, Esq.
Telephone: (973) 596-4523
Facsimile: (973) 639-6244
E-mail: Dcrapo@gibbonslaw.com
*Special Counsel for the Appellees,*
*The Great Atlantic & Pacific Tea Company, Inc., et al.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,[1]<br><br>Debtors. | Bankruptcy Appeal<br><br>Civil Action No. 20-583-CM-LMS<br><br>(Jointly Administered) |
| IN RE:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.,*<br><br>Debtors. | Chapter 11<br>Case No. 15-23007-RDD<br>(Jointly Administered) |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC. *et al.*<br><br>Plaintiff,<br>v.<br><br>PEPSICO, INC, *et al.*,<br><br>Defendants. | Adv. Proc. No. 18-08245 (RDD)<br><br>**APPELLEE'S MEMORANDUM OF LAW IN OPPOSITION TO APPELLANTS MOTION FOR LEAVE TO APPEAL** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 19 Spear Road, Suite 310, Ramsey, New Jersey 07446.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT AND STATEMENT OF MATERIAL FACTS ......................... 1

LEGAL ARGUMENT ...................................................................................................... 6

    A.      Interlocutory Appeals Are Disfavored and Granted Only in Exceptional
            Circumstances. ........................................................................................... 6

    B.      The Appellants Fail to Identify a Controlling Question of Law Appropriate
            for Interlocutory Review. ............................................................................ 8

    C.      Because this Bankruptcy Appeal Raises Only Standard Contract
            Questions, There is No Significant Difference of Opinion for This Court to
            Resolve. ..................................................................................................... 11

    D.      An Interlocutory Appeal from the SJ Order Cannot Materially Advance
            the Ultimate Termination of the Litigation. .............................................. 14

    E.      Because the Appellees Fail to Meet the Statutory Requirements of
            § 1292(b), They Fail to Demonstrate the Exceptional Circumstances
            Necessary to Justify an Interlocutory Appeal from the SJ Order. ......................... 17

CONCLUSION ................................................................................................................ 18

2779260.1 032596-97802

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Belton*,
  2016 WL 164620 (S.D.N.Y. Jan. 12, 2016) ............................................................................9

*Benfield v. Mocatta Metals Corp.*,
  1993 WL 148978 (S.D.N.Y. May 5, 1993) ...........................................................................10

*Bilello v. JPMorgan Chase Ret. Plan*,
  603 F.Supp.2d 590 (S.D.N.Y. 2009)......................................................................................13

*Caguas Central Savings Bank v. United States*,
  213 F.3d 1304 (Fed. Cir. 2000).........................................................................................3, 9

*Casey v. Long Island R.R.*,
  406 F.3d 142 (2d Cir. 2005).................................................................................................6

*Certain Underwriters at Lloyds of London v. Illinois National Insurance Co.*,
  2013 WL 310383 (S.D.N.Y. Jan. 25, 2013) ........................................................................12

*In re Duke and Benedict, Inc.*,
  278 B.R. 334 (S.D.N.Y. 2002)..............................................................................................14

*In re Duplan Corp.*,
  591 F.2d 139 (2d Cir. 1978)..................................................................................................14

*In re Enron Creditors Recovery Corp.*,
  2009 WL 3349471 ...........................................................................................................13, 14

*In re Facebook, Inc., IPO Securities and Derivative Litigation*,
  986 F.Supp.2d 524 (S.D.N.Y. 2014)............................................................................ *passim*

*Flor v. Bot Fin. Corp. (In re Flor)*,
  79 F.3d 281 (2d Cir. 1996)..............................................................................................6, 12

*In re FPSDA I, LLC*,
  470 B.R. 257 261 (E.D.N.Y. 2012) ..............................................................................6, 12, 17

*German v. Fed. Home Loan Mortg. Corp.*,
  896 F. Supp. 1385 (S.D.N.Y. 1994)........................................................................................7

*Gibson v. Kassover*,
  343 F.3d 91 (2d Cir. 2003)......................................................................................................8

ii

*Glatt v. Fox Searchlight Pictures, Inc.*,
   2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013)...............................................................14

*In re IBI Security Services, Inc.*,
   174 B.R. 664 (E.D.N.Y. 1994) ...............................................................7, 11, 16, 17

*In re Johns-Manville Corp.*,
   47 B.R. 957 (S.D.N.Y. 1985)...............................................................8

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990)...............................................................6, 12

*Koehler v. Bank of Bermuda Ltd.*,
   101 F.3d 863 (2d Cir. 1996)...............................................................6, 14

*In re Lehman Bros. Holdings*,
   2010 WL 10078534 ...............................................................17

*In re Lehman Bros. Holdings, Inc.*,
   2010 WL 10078354 (S.D.N.Y. Sept. 23, 2010)...............................................................13

*Lehman Bros. Special Fin., Inc. v. BNY Corporate Trust Services, Ltd* (*In re Lehman Bros. Holdings, Inc.*),
   422 B.R. 403 (S.D.N.Y. 2009)...............................................................7, 9

*McKenzie-Gilyard v. HSBC Bank Nevada, N.A.*,
   2008 WL 2622931 (E.D.N.Y. July 1, 2008)...............................................................8

*Mills v. Everest Reinsurance Co.*,
   771 F.Supp.2d 270 (S.D.N.Y. 2009)...............................................................7, 11, 12, 17

*In re MSR Resort Golf Courts LLC*,
   2015 WL 5172956 (S.D.N.Y. Sept. 3, 2015)...............................................................9

*In re Oxford Health Plans, Inc.*,
   182 F.R.D. 51 (S.D.N.Y. 1998) ...............................................................14

*Parkinson v. April Industries, Inc.*,
   520 F.2d 650 (2d Cir. 1975)...............................................................7

*In re Perry H. Koplik & Sons, Inc.*,
   377 B.R. 69 (SDNY 2007)...............................................................9, 11, 12

*S.E.C. v. Credit Bancorp, Ltd.*,
   103 F.Supp.2d 223 (S.D.N.Y. 2000)...............................................................11

*SEC v. Credit Bancorp*,
   183 F.Supp.2d at 227 ...............................................................12

2779260.1 032596-97802

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities,*
*LLC,*
  2011 WL 6057927 (S.D.N.Y. Dec. 6, 2011) ...............................................6, 7, 9, 14

*Smart World Technologies v. Juno Online Services, Inc. (In re Smart World*
*Technologies, Inc.)*
  423 F.3d 166 (2d Cir. 2005).........................................................................4, 13

*Thaler v. Estate of Arbore (In re Poseidon),*
  443 B.R. 271 (E.D.N.Y. 2010) ...............................................................................9

*United States v. Bond,*
  2009 WL 3254472 (S.D.N.Y. Oct. 9, 2009) ....................................................14, 15

*In re Wingspread Corp.,*
  186 B.R. 803 (S.D.N.Y. 1995).................................................................................7

*In re WorldCom, Inc. Securities Litigation,*
  2003 WL 22953644 (SDNY Dec. 16, 2003) ............................................... *passim*

## Statutes

11 U.S.C. § 546(a) ....................................................................................2, 3, 5, 7, 10, 11

28 U.S.C. § 158(a)(3)........................................................................................................6

28 U.S.C. § 1292(b)...................................................................................6, 11. 12, 13, 16

United States Bankruptcy Code, Chapter 5 ................................................................1

iv

Appellees, The Great Atlantic & Pacific Tea Company, Inc., *et al.* (collectively,

"**Debtors**" or "**Appellees**") submit this memorandum of law in support of their opposition to the

Motion for Leave to Appeal ("**Leave Motion**") of the Appellants, PepsiCo, Inc., Bottling Group,

LLC (d/b/a Pepsi Beverages Company and f/d/b/a The Pepsi Bottling Company), Frito-Lay

North America, Inc., Quaker Sales and Distribution, Inc., and Muller Quaker Dairy, LLC

(collectively, "**Appellants**").  By the Leave Motion, the Appellants seek leave to appeal a

January 2, 2020 Order ("**SJ Order**") of the United States Bankruptcy Court for the Southern

District of New York ("**Bankruptcy Court**") denying their motion for summary judgment ("**SJ**

**Motion**") on Counts One through Four of the Appellees' Second Amended Complaint

("**Complaint**") in the adversary proceeding below ("**Adversary Proceeding**").  As amply

demonstrated below, the Appellants fail to meet the strict standards for leave to file an

interlocutory appeal set forth in 28 U.S.C. § 1292(b), which are utilized in determinations

whether to permit interlocutory appeals from bankruptcy court orders.  Accordingly, the Leave

Motion must be denied.

## PRELIMINARY STATEMENT AND STATEMENT OF MATERIAL FACTS

The SJ Motion presented a simple question of contract interpretation:  whether the

protections of a series of five tolling agreements (collectively, "**Tolling Agreements**") between

the Appellants and the Official Committee of Unsecured Creditors in the above-captioned

bankruptcy case ("**Committee**") extended to the holders of those claims, the Appellees'

bankruptcy estates.  Those five agreements tolled the statutes of limitations concerning certain

avoidance claims arising under Chapter 5 of the United States Bankruptcy Code (collectively,

"**Avoidance Claims**") with respect to which the Committee had been granted concurrent

standing with the Appellees to bring against the Appellants.  *See* ECF No. 5-1, pp. 3, 8, 13, 18

and 23.  It is beyond dispute that the Avoidance Claims are assets of the Appellees' bankruptcy

estate and have not been assigned or otherwise transferred to either the Committee or any other party. *See* ECF No. 5-1, pp. 2-3, 7-8, 12-13, 17-18 and 22-23. It is equally beyond dispute that the Committee lacked the ability to resolve the Avoidance Claims unilaterally, and its authority to prosecute the Avoidance Claims was otherwise being subject to the oversight and direction of an oversight committee, to which the Appellees, the Committee and certain Secured Creditors of the Appellees each delegated a member. ECF Nos. 5-1, pp. 3, 8, 13, 18 and 23; and 5-2, p. 12:7-22.

The Appellants contended below that the plain language of the Tolling Agreements did not extend their protections to the Appellees, a position the Appellees contested. ECF No. 4, pp. 5-7. At the December 17, 2019 hearing on the SJ Motion ("**SJ Hearing**"), the Bankruptcy Court denied the SJ Motion. ECF No. 5-2 at p. 23:7.

Relying on the plain language analysis urged by the Appellants, the Bankruptcy Court determined that the operative provisions of each of the Tolling Agreements (*i.e.*, § 2 of each agreement) contained three separate agreements addressing the time in which the Avoidance Claims must be brought. ECF No. 5-2, p. 13, lines 15-18. The first of those agreements provides as follows:

> Pepsi agrees that all statutes of limitation, including but not limited to those set forth in Section 546 of the Bankruptcy code applicable to any Causes(s) of Action that the Committee *may* bring against Pepsi are hereby extended from the Commencement Date [*of the applicable Tolling Agreement*] to and including [*the applicable deadline*] (the "Tolling Period) (emphasis added).

ECF Nos. 5-1, pp. 4, 9, 14,19, and 24; and 5-2, pp. 12:2—13:25. The Bankruptcy Court determined that, by its plain language, the scope of that agreement was not limited to actions actually brought by the Committee but extended to claims the Committee had standing to bring, no matter who actually brought the action. ECF No. 5-2, p. 14:14-21. In other words, the first

2

agreement contained in § 2 of each of the Tolling Agreement, "on its plain terms, applies to the causes of action." *Id.*, p. 14:18-21. That agreement effectuated a tolling of the Avoidance Claims, not simply the Committee's authority to bring them. *Id.*, pp. 14:25—15:3 ("but the claims are tolled as claims exist, as opposed to claims that are brought by the committee . . ."); and 17:16-19 ("[i]t's the tolling is as to the cause of action, not as to the [C]ommittee's exclusive right to bring [them], because it didn't have an exclusive right."

Consistent with the reasoning in *Caguas Central Savings Bank v. United States*, 213 F.3d 1304 (Fed. Cir. 2000), on which the Appellants relied below, the Bankruptcy Court's analysis of the Tolling Agreements was informed by their purpose and the context in which they were executed—a purpose and context that differed significantly from the situation in *Cauguas*. ECF No. 5-2, pp. 11:3—12:22. Based on significant differences in context and purpose, the Bankruptcy Court distinguished several of the cases on which the Appellants relied below, which involved tolling agreements between the United States and either the Resolution Trust Corporation or the Federal Deposit Insurance Company. ECF No. 5-2, pp. 10:21—11:2 and 21:12-23. The Bankruptcy Court also considered the developing interpretation of 11 U.S.C. § 546(a) as a limitations statute, and how that development impacted the formulation of tolling agreements in avoidance actions. ECF No. 5-2, pp. 15:15—16:22. At bottom, however, the Bankruptcy Court's ruling was a plain language analysis. *See* ECF No. 50-2, p. 12:23-24 ("[b]ut more importantly, I think, is the actual language in paragraph 2, the tolling provision"); p.15:3-5 ("[s]o that's how I look at this, just on the plain language analysis in context"); 17:6-9 (". . . on a plain meaning reading, Just see this as three different agreements, and the first one applies to the cause of action itself . . .").

The Appellants misapprehend the Bankruptcy Court's ruling. Notwithstanding the plain

language analysis discussed above that supported that ruling, the Appellants erroneously contend

that the Bankruptcy Court relied on the concurrent standing of the Appellees and the Committee

to prosecute Avoidance Claims as a basis for its ruling (ECF No. 4, p. 1) and conflated the

Appellees with the Committee.  ECF No. 4, pp. 3, 7.  The Appellants' errors are carried over into

the three questions they present on appeal.  As to the first of those questions, the Bankruptcy

Court did not hold that:

> . . . a debtor and an official committee with court-approved
> concurrent standing, . . . . should be considered one and the same
> legal entity when negotiating or contracting with third parties so
> that third parties dealing with either separately may fairly be
> charged with the knowledge they are actually dealing with both as
> counterparties.

ECF No. 4, pp.7-8.  Similarly, as to the second question, the Bankruptcy Court did not hold that:

> the benefits of a contract negotiated, entered into and executed
> solely between (a) an official committee that has, with the debtor's
> consent, gained court-approved standing, concurring with the
> Debtor to bring estate causes of action and (b) a defendant to such
> a cause, may be extended to the debtor in lieu of the contracting
> part-committee, over the objections of the contacting party-
> defendant.

ECF No. 4, p. 8.  As demonstrated above, the Bankruptcy Court merely held that the plain

language of the first agreement contained in § 2 of each of the Tolling Agreements preserved

avoidance claims and not simply the Committee's right to bring them.

As to the Appellants' contention in their third question presented on appeal to the

contrary, the Bankruptcy Court did not misapply *Smart World Technologies v. Juno Online*

*Services, Inc., (In re Smart World Technologies, Inc.)* 423 F.3d 166 (2d Cir. 2005).  The

Bankruptcy Court cited the case for the provision that courts should be specific in orders

conferring standing on parties (ECF No. 5-2, pp. 22:21—22:5) and not for the proposition that

the Tolling Agreements tolled the statute of limitations set forth in 11 U.S.C. § 546(a) for the

4

Appellees simply because they had concurrent standing with the Committee to prosecute avoidance actions on behalf of the estate.  ECF No. 5-4, p. 8.  In point of fact, what the Bankruptcy Court actually said was that, because the Committee did not have exclusive standing to bring the Avoidance Actions,

> "*and* given that the cause of action is tolled in the first of those three aspects of paragraph 2 [of the Tolling Agreements], it just seems that the *plain language* of the agreement means that it's tolled.  The cause of action is tolled, as well as the [C]ommittee's right to bring it, which is in the other two [clauses of paragraph 2 [of the Tolling Agreements].[2]

ECF No. 5-2, p. 23:12-18 (emphasis added).  In sum, the Bankruptcy Court relied on *SmartWorld* as further support of its plain meaning reading of the Tolling Agreements and not as support for a general rule that third parties can insinuate themselves into tolling agreements to which they are not parties simply because they have concurrent standing with a party to the tolling agreement with respect to the causes of action governed by the agreement.

The Bankruptcy Court's ruling on the SJ Motion was grounded in a plain language analysis of the Tolling Agreements.  The Appellants seriously misapprehend that ruling.  Consequently, for the reasons set forth below, the Leave Motion must be denied.

---

[2] The other two clauses of § 2 provide as follows:

> . . . the Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause(s) of Action [*actually*] brought by the Committee against Pepsi.  Pepsi acknowledges that it will be estopped hereby from arguing that this Stipulation is ineffective to extent the time within which the Committee must commence an action to pursue the Causes of Action

ECF Nos. 5-1, pp. 4, 9, 14,19, and 24

2779260.1 032596-97802

**LEGAL ARGUMENT**

**A.   Interlocutory Appeals Are Disfavored and Granted Only in Exceptional Circumstances.**

District courts are authorized to hear appeals "with leave of the court, from . . . interlocutory orders or decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(3). When determining whether to permit such interlocutory appeals, district courts typically rely on the prerequisites set forth in 28 U.S.C. § 1292(b). Those prerequisites are:

i.      The order in question involves a controlling question of law;
ii.     The order contains substantial grounds for difference of opinion and
iii.    An immediate appeal from the order may materially advance the ultimate termination of the litigation.

28 U.S.C. § 1292(b). The burden is on the party seeking leave for an interlocutory appeal to demonstrate that all three prerequisites have been met. *In re Facebook, Inc., IPO Securities and Derivative Litigation*, 986 F.Supp.2d 524, 529 (S.D.N.Y. 2014), *citing Casey v. Long Island R.R.*, 406 F.3d 142, 146 (2d Cir. 2005); *In re FPSDA I, LLC*, 470 B.R. 257 261 (E.D.N.Y. 2012).

28 U.S.C. § 158(a)(3) and 28 U.S.C. § 1292(b) (hereafter, " **§ 1292(b)**") provide strictly limited authorization for interlocutory appeals. *See, e.g., Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (§ 1292(b) provides a "a rare exception to the final judgment rule that generally prohibits piecemeal appeals"); *In re WorldCom, Inc. Securities Litigation*, 2003 WL 22953644 *4 (SDNY Dec. 16, 2003) (§1292(b) "is to be narrowly construed"), *quoting Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (§ 1292(b) "must be strictly limited to the precise conditions stated in the law"). Section 1292(b) creates a significant hurdle to interlocutory appeals because only *exceptional circumstances* justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment. *Flor v. Bot Fin. Corp. (In re Flor)*, 79 F.3d 281, 284, (2d Cir. 1996); *Klinghoffer*, 921 F.2d at 25 (citations

6

omitted); *Facebook*, 986 F.Supp.2d at 529-30 (citations omitted); *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities, LLC*, 2011 WL 6057927 *5 (S.D.N.Y. Dec. 6, 2011) (citations omitted) ("***SIPC v. BLMIS***"); *Lehman Bros. Special Fin., Inc. v. BNY Corporate Trust Services, Ltd* (*In re Lehman Bros. Holdings, Inc.*), 422 B.R. 403, 406 (S.D.N.Y. 2009) ("***Lehman Brothers***").  In other words, in addition to the three prerequisites enumerated in § 1292(b), a party seeking leave for an interlocutory appeal must demonstrate "exceptional circumstances" justifying the appeal.  *In re IBI Security Services, Inc.*, 174 B.R. 664, 669 (E.D.N.Y. 1994).

By providing strictly limited authority for interlocutory appeals, § 1292(b) reflects and reinforces the strong disfavor of interlocutory appeals in federal practice.  *See Facebook*, 986 F.Supp.2d at 530 (interlocutory appeals are disfavored in federal practice).  Based on that disfavor, "[c]ourts have frowned on allowing an interlocutory appeal of a denial of summary judgment." *Mills v. Everest Reinsurance Co.*, 771 F.Supp.2d 270, 275 (S.D.N.Y. 2009).  *See also Parkinson v. April Industries, Inc.*, 520 F.2d 650, 654 & n. 3 (2d Cir. 1975) (an order denying a motion for summary judgment generally is not immediately appealable even though an erroneous denial may require additional expense and effort on the part of both litigants and the district court).[3]  In a similar vein, courts have also held that interlocutory appeals should not be permitted to merely "provide early review of difficult rulings in hard cases. *Facebook*, 986 F.Supp.2d at 530; *SIPC v. BLMIC*, 2011 WL 6057927 *5, *quoting German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1994).  An interlocutory appeal, therefore, should not be authorized where it would "contravene the well-established judicial policy of

---

[3] Although it is tempting to characterize this bankruptcy appeal as a statute of limitations case, it is not such a case. There is no question that the statute of limitations for bringing Avoidance Claims in the Appellees' bankruptcy case commenced on July 19, 2015.  This issue on this appeal is one of contract law.  Hence, cases like *In re Wingspread Corp.*, 186 B.R. 803, 806 (S.D.N.Y. 1995) (determination when the § 546 statute of limitation commenced was a controlling question of law) are factually and legally inapposite to a resolution of this bankruptcy appeal.

discouraging interlocutory appeals and avoiding the delay and disruption which results from such piecemeal litigation." *In re Johns-Manville Corp.*, 47 B.R. 957, 960 (S.D.N.Y. 1985).

Even if a would-be appellant has met the requirements of § 1292(b), the district court has "unfettered" discretion to deny a motion for leave to appeal an interlocutory order of the bankruptcy court if other factors counsel against it. *Gibson v. Kassover*, 343 F.3d 91, 94 (2d Cir. 2003); *Facebook*, 986 F.Supp.2d at 530. Such factors include docket congestion and the system-wide costs and benefits of allowing the appeal. *Facebook, id.* In any event, this Court need not exercise its unfettered discretion to deny the Leave Motion. As demonstrated below, the Appellants fail to overcome the significant hurdles posted by the statutory requirements of § 1292(b) for an interlocutory appeal.

**B.      The Appellants Fail to Identify a Controlling Question of Law Appropriate for Interlocutory Review.**

Because the Appellants misapprehend the Bankruptcy Court's ruling at the Leave Hearing, they fail to present a "controlling question of law" ripe for review on an interlocutory basis. Because the Bankruptcy Court resolved the SJ Motion on the basis of established contract law, it was unnecessary for that court to resolve the issues embedded in the three questions identified above that the Appellants present on appeal. *See WorldCom Securities Litigation*, 2003 WL 22953644 *5 (where the Court concluded that a question of law for which certification was sought was not controlling because, *inter alia*, there were alternative analyses by which the bankruptcy court could have resolved the question). As amply demonstrated above, the Bankruptcy Court did not: (i) rule on any of those issues, (i) did not ground its ruling on the SJ Motion in the concurrent standing of the Appellees and Committee; and (iii) did not conflate the Appellees and the Committee. *See McKenzie-Gilyard v. HSBC Bank Nevada, N.A.*, 2008 WL 2622931 *5 (E.D.N.Y. July 1, 2008) (denying motion for leave to appeal, in part, because the

8

appellant misstated the bankruptcy court's actual ruling).

To constitute a "controlling question of law", moreover, the question must be a "pure" question of law that the court can decide quickly and cleanly without having to study the record. *Facebook*, 986 F.Supp.2d at 536; *SIPC v. BLMIS*, 2011 WL 6057927 *4; *quoting Lehman Brothers*, 422 B.R. at 405. A finding by the bankruptcy court that raises a "legal" question will be denied interlocutory appeal if "the resolution of the issue requires a heavily fact-based analysis." *SIPC .v BLMIC*, 2011 WL 6057927 *5, *citing Thaler v. Estate of Arbore* (*In re Poseidon*), 443 B.R. 271, 276 (E.D.N.Y. 2010). *See also In re Belton*, 2016 WL 164620 *1 (S.D.N.Y. Jan. 12, 2016) (denying interlocutory appeal where review required a "particularized inquiry into the nature of the claim and the facts of the specific bankruptcy"); *Facebook*, 986 F.Supp.2d at 533, 536 (fact-specific applications of law to fact are inappropriate for interlocutory appeals). The application of established case law to facts is similarly inappropriate for interlocutory appeal, *Facebook, id.*; *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 74 (SDNY 2007), particularly in cases setting forth unique facts. *See In re MSR Resort Golf Courts LLC*, 2015 WL 5172956 *2 (S.D.N.Y. Sept. 3, 2015).

As amply demonstrated above, the Appellants substantially misapprehend the Bankruptcy Court's ruling at the SJ Hearing. The Bankruptcy Court did not enunciate the three rules implicit in the Appellants' three questions on appeal, did not ground its ruling in the concurrent standing of the Committee and the Appellees to prosecute Avoidance Claims and did not conflate the Appellees and the Committee. Rather, the court engaged in the plain language analysis of § 2 of each of the Tolling Agreements urged by the Appellants below. Consistent with the reasoning in *Caguas, supra*, on which the Appellants relied below, the Bankruptcy Court also considered the purpose of the Tolling Agreements and the context which they were executed to interpret them.

The Bankruptcy Court's ruling was predicated on a very specific set of facts, including: (i) the precise language and structure of the Tolling Agreements; (ii) the purpose of the Tolling Agreements (facilitating settlement) and the context in which they were executed (a complex global settlement); (iii) the complex Global Settlement Agreement and the Global Settlement Agreement Approval Order themselves; and (iv) the impact of the uncertainty of the meaning of 11 U.S.C. § 546 on the drafting of tolling agreements.  ECF No. 5-2 at pp. 10:19—17:9 and 18:2—22:1.

Under the foregoing circumstances, the Appellants have not—and cannot—demonstrate the "controlling question of law" necessary to justify the interlocutory appeal they seek. Resolution of that appeal will require the consideration, not only the terms of the Tolling Agreements but facts and documents relevant to their purpose and the context in which they were executed.  Additionally, the Bankruptcy Court expressly declined to rule on other issues, such as the Appellees' claim that they were third party beneficiaries of the Tolling Agreements, which would be raised in this bankruptcy appeal.  ECF No. 5-2 at p. 24:8-11.

In other words, this Court will not be able to quickly and cleanly resolve this bankruptcy appeal without having to study the record of both the Adversary Proceeding and, more importantly, the Appellee's bankruptcy cases.  The result would be a heavily fact-based analysis that is inappropriate for an interlocutory appeal.  Moreover, because the issues on appeal arise largely under contract law, this Court would essentially be applying established case law to facts, some of which, if not unique, are uncommon, a factor that similarly renders the SJ Order an inappropriate subject for an interlocutory appeal.  *See Benfield v. Mocatta Metals Corp.*, 1993 WL 148978 *7 (S.D.N.Y. May 5, 1993) (where parties did not dispute that a specific statute of limitation applied, the determination of when statute of limitations accrued involved application

of the appropriate legal standard to the facts alleged and did not involve a controlling question of

law).

Although relevant, the precedential value of a decision on appeal is not "*per se* sufficient

to meet the 'controlling issue of law' standard." *Facebook*, 986 F.Supp.2d at 537-38*; S.E.C. v.

Credit Bancorp, Ltd.*, 103 F.Supp.2d 223, 227 (S.D.N.Y. 2000).  As the court in *Facebook, id.*,

pointed out, all court opinions have some precedential value. *Facebook, id.* at 538.  At the SJ

Hearing,  the Bankruptcy Court addressed the specific and unusual facts of the Appellees'

bankruptcy cases as well as the impact of the uncertainty surrounding 11 U.S.C. § 546 and

applied standard contract law to the Tolling Agreements.  By making such a focused ruling, the

Bankruptcy Court significantly limited its precedential value. *See Facebook, id.*, at 538 (in

support of denying leave for an interlocutory appeal, the court noting that the bankruptcy court's

ruling was "narrow,"  would not disrupt the applicable market and did not oppose new duties on

parties).  Moreover, the Bankruptcy Court's ruling was delivered orally and not in in the form of

a written opinion, a factor likely to limit its use as precedent.  Under the circumstances, it is

submitted that the Bankruptcy Court's ruling on the SJ Motion is not sufficiently precedential to

meet the controlling issue of law standard.  In sum, as demonstrated above, the Appellants have

failed to demonstrate a controlling issue of law appropriate for an interlocutory appeal.

**C.      Because this Bankruptcy Appeal Raises Only Standard Contract Questions, There
          is No Significant Difference of Opinion for This Court to Resolve.**

Demonstrating that a challenged order or ruling evidences a "substantial ground for a

difference of opinion" on a legal issue requires more than a showing of a "strong disagreement

between the parties." *Koplik*, 377 B.R. at 74; *IBI Security Services*, 174 B.R. at 670.  It requires

more than a claim that the court's decision was wrong. *Mills*, 771 F.Supp.2d at 273; *Koplik*, 377

B.R. at 74.  An interlocutory appeal is inappropriate where a party does not claim that the

11

bankruptcy court applies the wrong legal standard, but rather contends that the court erred in applying that standard. *FPSDA I, LLC*, 470 B.R. at 265. The status of a disputed issue as a question of first impression in a district or circuit, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion. *Flor*, 79 F.3d at 284. *Accord Koplik*, 377 B.R. at 76. Similarly, the difficulty involved in answering such a question, by itself, does not evidence a significant difference of opinion, *Mills*, 771 F.Supp.2d at 273, although a *difficult issue of first impression* may provide a substantial ground for difference of opinion. *Klinghoffer*, 921 F.2d at 25. In this District, substantial grounds for difference of opinion exist only when "(1) there is conflicting authority on the issue; or (2) the issue is particularly difficult *and* of *first impression* for the Second Circuit." *Facebook*, 986 F.Supp.2d at 539 (emphasis added). *See also Certain Underwriters at Lloyds of London v. Illinois National Insurance Co.*, 2013 WL 310383 *1 (S.D.N.Y. Jan. 25, 2013) (to justify an interlocutory appeal, the challenged order must concern something more than a novel and interesting issue about which there may be substantial disagreement); *WorldCom*, 2003 WL 22953644 *6 (where the court noted that the question of *related to* jurisdiction was not a matter of first impression in the Second Circuit). The disagreement must be significant; some level of disagreement among the courts does not demonstrate substantial grounds for difference of opinion. *SEC v. Credit Bancorp*, 183 F.Supp.2d at 227.

In the case at bar, there is no question of "genuine doubt as to whether the [Bankruptcy Court] applied the correct legal standard in the [SJ Order]." *Facebook*, 986 F.Supp.2d at 540. The legal propositions imbedded in the three questions the Appellants raise on appeal were neither advanced by the Appellees below nor addressed by the Bankruptcy Court at the SJ Hearing. It was unnecessary for the Bankruptcy Court to consider those issues. The SJ Motion

12

raised standard contract law issues that the Bankruptcy Court resolved by a plain language

reading of the Tolling Agreements (particularly the three agreements contained in § 2 of each),

which was urged by the Appellants, and a consideration of their purpose and the context in

which they were executed.

The Appellants' reliance on cases like the *STN Trilogy* and *Smart World* as evidence of a

substantial ground for a difference of opinion (*See* ECF No. 4 at pp. 12-15), is, therefore,

misplaced. Although the cases involved third parties to whom the debtors' authority to bring

actions on behalf of their bankruptcy estate were delegated, they are factually inapposite and do

not address the contract law issues actually raised by the SJ Motion and addressed by the

Bankruptcy Court. Of crucial significance to this bankruptcy appeal, those cases do not address

the issue addressed by the Bankruptcy Court below—whether a tolling agreement preserved one

or more causes of action—as opposed to the authority of a specifically identified non-debtor to

prosecute them. They do not constitute contrary authority on the issues decided by the

Bankruptcy Court. *Bilello v. JPMorgan Chase Ret. Plan*, 603 F.Supp.2d 590, 593-95 (S.D.N.Y.

2009) (no substantial ground for difference of opinion where the cases cited by the appellant are

factually distinguishable or do not address applicable issues in detail). In point of fact, the

Appellants fail to cite to any contrary authority from either the Second Circuit or this District,

and research has not produced any such authority.[4] They have, therefore, failed to demonstrate

"substantial grounds for a difference of opinion on those issues. *See Facebook*, 986 F.Supp.2d at

pp. 540-42 (the court explained why the cases on which the appellant relied did not constitute

contrary authority); *WorldCom*, 2003 WL 22956634 *7 (party seeking leave for an interlocutory

---

[4] By contrast, in *Enron Creditors Recovery Corp*, 2009 WL 3349471 *7 (S.D.N.Y. Oct. 16, 2009) the bankruptcy court's opinion appeared to run contrary to twenty years of decisions by five United States Courts of Appeals. Similarly, in contrast to the situation before the Court in *In re Lehman Bros. Holdings, Inc.*, 2010 WL 10078354 *4 (S.D.N.Y. Sept. 23, 2010) and notwithstanding the rulings the Appellants imply that the Bankruptcy Court made, this bankruptcy appeal does not present a bankruptcy court's application of a novel statutory interpretation.

13

appeal failed to demonstrate a difference of opinion in the Second Circuit on whether their actions were related to the *WorldCom* bankruptcy).[5] Instead, the Appellants have present this Court with a case in which "the pleadings make clear that the issue on appeal involves nothing more than a disagreement among the parties as to the terms of [a] contract," that does not raise an issue that is "difficult and of first impression." *In re Duke and Benedict, Inc.*, 278 B.R. 334, 344 (S.D.N.Y. 2002) (court dismissed an interlocutory appeal where, as evidence of a substantial difference of opinion, the appellant (not unlike the Appellants, see ECF No. 4, p. 1) pointed only to the bankruptcy court's interpretation of a phrase in a contract). Under the circumstances, therefore, an interlocutory appeal of the SJ Order is inappropriate.

**D.      An Interlocutory Appeal from the SJ Order Cannot Materially Advance the Ultimate Termination of the Litigation.**

In contrast to the situation before the Court in *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471 *6, a resolution of the instant bankruptcy appeal will not terminate the Adversary Proceeding. However, an immediate appeal of an interlocutory order materially advances the ultimate termination of the litigation if it "promises to advance the time . . . or to shorten the time required for trial." *SIPC v. BLMIC*, 2011 WL 6057927 *4, *quoting In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 55 (S.D.N.Y. 1998), or has "the potential for substantial acceleration of the litigation. *Facebook*, 986 F.Supp.2d at 531; *SIPC v. BLMIC, id.*, *quoting In re Duplan Corp.* 591 F.2d 139, 148 n. 11 (2d Cir. 1978). This requirement is strictly construed. *Oxford Health Plans*, 182 F.R.D. at 53. Consequently, "intermediate appeals are reserved for those cases where an immediate appeal may avoid protracted litigation." *Koehler*, 101 F.3d at 865-66.

To meet this standard, the Appellants must address three factors. *See United States v.*

---

[5] For that reason, *Glatt v. Fox Searchlight Pictures, Inc.*, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) is inapposite

2779260.1 032596-97802

*Bond*, 2009 WL 3254472 *7 (S.D.N.Y. Oct. 9, 2009). First, the Appellants must address the length of the court proceedings saved by the reversal of an erroneous ruling. The Appellants acknowledge that, in addition to the Avoidance Claims, the Appellees seek to recover on certain accounts receivable claims, but attempt to minimize the importance of those claims. ECF No. 4, p.6. Although they aggregated less than the Avoidance Claims, the accounts receivable claims do total in excess of $7 million. They arise out of scores if not hundreds of transactions. Discovery on those claims has required and will continue to require the production, review and analysis of hundreds of pages of documents.

Although asserting that allowing their appeal to proceed could facilitate the resolution of the Adversary Proceeding, the Appellants do not detail the activity that has already occurred in Adversary Proceeding or provide an estimate of the time likely to be required to try the accounts receivable claims. That omission is curious because the Adversary Proceeding has been pending for almost two years, and the accounts receivable claims remain unresolved. The continued pendency of the accounts receivable claims indicates potential for significant pre-trial motion practice on those claims and a potential trial. Under the circumstances, the limited information available demonstrates that a consideration of the first factor from *Bond* weighs in favor of denying the Leave Motion.

The same result obtains with respect to the second and third factors: (i) the substantiality of the burdens imposed on the parties by a wrong ruling; and (ii) whether reversal would substantially alter the course of the [bankruptcy] court proceedings or that the parties will be relieved of any significant burden by reversal. *Bond*, 2009 WL 3254472 *7. The Appellees reiterate the lack of information provided by the Appellants concerning the current status of the Adversary Proceeding, which has been pending for almost two years. What cannot be denied is

2779260.1 032596-97802

that a resolution of the Avoidance Claims will not resolve the Appellees' accounts receivable claims. It is likely that those claims will be vigorously litigated. Hence, discovery may not be significantly streamlined.

The motion practice below and in this bankruptcy appeal already indicates that a dispositive ruling by this Court on the merits of Appellants' appeal will be further appealed to the Second Circuit. Such further appeals certainly have the potential for significantly delaying a resolution of the Appellee's accounts receivable claims, to the detriment of both the Appellants and the Appellees. While the appeal to the Second Circuit was being resolved, the Adversary Proceeding would continue as to the accounts receivable claims. If the Appellants are ultimately unsuccessful on their appeal of the SJ Motion, the Avoidance Claims will have to be litigated in as if the appeal had not happened, thereby adding to the duration of the Adversary Proceeding. *See Facebook*, 986 F.Supp.2d at 532 (interlocutory appeal dismissed, in part, because the appellant's lack of success on appeal would result in the litigation of the issues subject to the appeal). The result would be the very piecemeal and protracted litigation that the disfavor of interlocutory appeals is designed to prevent. *See IBI Sec. Service, Inc.*, 174 B.R. at 671 (motion for leave to appeal denied in part because the interlocutory appeal would not serve to avoid protracted and expensive litigation).

Under the circumstances, it is submitted, the burdens of further appeals will impose as many burdens and engender as many delays as requiring the Appellants to delay their appeal of the SJ Order until the entry of a final judgment in the Adversary Proceeding. For that reason, the Appellants cannot demonstrate that they will suffer any greater burdens from delaying their appeal than they would in going forward in their appeal.

It also bears noting that time savings is not the only aim of § 1292(b) and is not

dispositive on a motion for leave to appeal absent areas of law of first impression for the district court or areas where the applicable law precedent is unclear. *Mills*, 771 F.Supp.2d at 275. As demonstrated above, this bankruptcy appeal does not present this Court with issues of first impression or unclear precedent. The issues are fairly standard contract law issues. Accordingly, even if the time for resolving the Adversary Proceeding was shortened, the actual issues to be resolve do not merit an interlocutory appeal.

**E.      Because the Appellants Fail to Meet the Statutory Requirements of § 1292(b), They Fail to Demonstrate the Exceptional Circumstances Necessary to Justify an Interlocutory Appeal from the SJ Order.**

Because the Appellants fail to meet the requirements of § 1292(b) for an interlocutory appeal from the SJ Order, they also fail to demonstrate the existence of the "exceptional circumstances" required to obtain leave for such an appeal. For example, reversal of the SJ Order after a trial will not require a *relitigation* of issues raised in the Adversary Proceeding, but at most, an adjustment to any award in favor of the Appellees. *IBI Sec. Services, Inc.*, 174 B.R. at 671 (interlocutory appeal denied in part because reversal of the bankruptcy court's decision after trial would not require relitigation of issues). The mere fact that the Appellants may obtain reversal of the SJ Order and obtain summary judgment does not constitute an exceptional circumstance justifying interlocutory appeal. *See FSPDA I, LLC*, 47 B.R. at 272 (were the possibility that an order of the bankruptcy court may be reversed on appeal at the end of a case, interlocutory appeals would become commonplace in federal courts). Reversal of a motion denying summary judgment can always lead to a grant of summary judgment. *See Facebook*, 986 F.Supp.2d at 532 ("obtaining reversal of an opinion denying a motion to dismiss can always lead to dismissal"). In contrast to the situation in *In re Lehman Bros. Holdings*, 2010 WL 10078534 *9, a decision on the contract law that are the subject of this bankruptcy appeal will not generate the type of industry-wide ramifications that could have been generated by Judge

Peck's opinion. Having not shown any "exceptional circumstances," the Appellants have not demonstrate entitlement to appeal from the SJ Order.

## CONCLUSION

Section 1292(b) sets a very high bar for obtaining leave for an interlocutory appeal. The Appellants have failed to meet that bar. They have failed to demonstrate the existence of a controlling issue of law appropriate for interlocutory review. Having failed to do so, they have failed to demonstrate substantial grounds for a difference of opinion with respect to either the SJ Order or the Bankruptcy Court's oral ruling on the SJ Motion. Because a decision of this Court on the merits of this bankruptcy appeal will not resolve all issues raised in the Adversary Proceeding and is likely to be appealed to the Second Circuit, reversal of the SJ Order will not substantially advance the litigation below. The Appellants have not demonstrated any exceptional circumstances warranting an interlocutory appeal of the SJ Order. Consequently, it is submitted that the Leave Motion must be denied.

Respectfully submitted,

By: _____
Phillip J. Duffy
David N. Crapo
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
pduffy@gibbonslaw.com
(973) 596-4821
dcrapo@gibbonslaw.com
(973) 596-4523
*Attorneys for Plaintiffs*

Dated: February 14, 2020
Newark, New Jersey

18