Jeffrey Chubak
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 497-8247
jchubak@aminillc.com
- and -
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
FRANKGECKER LLP
1327 West Washington Boulevard, Suite 5G-H
Chicago, Illinois 60607
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com
*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 20-cv-00583-CM |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,[1] | Chapter 11 |
| Debtors. | Case No. 15-23007-RDD |
| | Jointly Administered |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, | Adv. Proc. No. 18-08245-RDD |
| Plaintiffs, | |
| v. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO APPEAL** |
| PEPSICO, INC., *et al.*, | |
| Defendants. | |

---

[1] The Debtors are: 2008 Broadway, Inc.; The Great Atlantic & Pacific Tea Company, Inc.; A&P Live Better, LLC; A&P Real Property, LLC; APW Supermarket Corporation; APW Supermarkets, Inc.; Borman's, Inc.; Delaware County Dairies, Inc.; Food Basics, Inc.; Kwik Save Inc.; McLean Avenue Plaza Corp.; Montvale Holdings, Inc.; Montvale-Para Holdings, Inc.; Onpoint, Inc.; Pathmark Stores, Inc.; Plainbridge LLC; Shopwell, Inc.; Super Fresh Food Markets, Inc.; The Old Wine Emporium of Westport, Inc.; Tradewell Foods of Conn., Inc.; and Waldbaum, Inc. (together, the "Debtors").

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ........................................................................................................................................ 1

I.     "EXCEPTIONAL CIRCUMSTANCES" ARE PRESENT TO JUSTIFY HEARING
THE APPEAL ...................................................................................................................... 1

II.    THE ORDER INVOLVES CONTROLLING LEGAL QUESTIONS ............................ 2

III.   THERE IS ROOM FOR SUBSTANTIAL DIFFERENCE OF OPINION ON THESE
FIRST IMPRESSION ISSUES .......................................................................................... 7

IV.   IMMEDIATE APPEAL WOULD ADVANCE TERMINATION OF THE
LITIGATION ....................................................................................................................... 8

CONCLUSION .................................................................................................................................... 9

CERTIFICATE OF COMPLIANCE ...............................................................................................

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*,
   189 F.3d 208 (2d Cir. 1999)......................................................................... 6

*Caguas Cent. Sav. Bank v. U.S.*,
   215 F.3d 1304 (Fed. Cir. 2000).................................................................. 3, 6

*In re Dewey & LeBoeuf LLP*,
   No. 12-12321, 2012 WL 5985445 (Bankr. S.D.N.Y. Nov. 29, 2012) ..................... 6

*In re Enron Creditors Recovery Corp.*,
   No. 03-92677, 2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009)............................... 2, 7

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir.1990)........................................................................... 2, 7

*Official Comm. of Equity Security Holders of Adelphia Commc'ns Corp. v. Adelphia Commc'ns
   Corp. (In re Adelphia Commc'ns Corp.)*,
   544 F.3d 420 (2d Cir. 2008)......................................................................... 7

*Peters v. Jinkosolar Holding Co., Ltd.*,
   No. 11-7133, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012)................................. 4

*Resolution Trust Corp. v. Bonner*,
   848 F. Supp. 96 (S.D. Texas 1994)................................................................ 6

*Smart World Technologies v. Juno Online Services, Inc. (In re Smart World Technologies, Inc.)*,
   423 F.3d 166 (2d Cir. 2005)......................................................................... 7

*Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*,
   779 F.2d 901 (2d Cir. 1985)......................................................................... 6, 7

**Statutes**

11 U.S.C. §547............................................................................................. 4

28 U.S.C. §1292........................................................................................... 1, 2

Pepsi[1] respectfully submits this reply memorandum of law in support of its motion for leave to appeal [Dkt. No. 3] ("Motion"), and in response to Debtors' memorandum of law in opposition to the Motion [Dkt. No. 11] ("Opposition Brief").

## ARGUMENT

The Opposition Brief misinterprets the Bankruptcy Court's oral ruling and Pepsi's arguments, downplaying the impact of resolving the claims addressed in the summary judgment motion ("SJ Motion") and suggesting that there are no "exceptional circumstances," all to avoid an immediate appeal. The Debtors obfuscate the fact that a successful interlocutory appeal would remove from contention $18 million in claims under the Bankruptcy Code, leaving only state law claims for $7 million ("State Claims") for resolution by dispositive motion or trial.

Pepsi has satisfied 28 U.S.C. §1292(b) and demonstrated that appeal of the Order denying summary judgment ("Order") would involve: (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that immediate appeal may materially advance ultimate termination of the litigation. While the State Claims could still require trial, whether or not the Motion is granted, the preference claims at issue ("Preference Claims") involve payments of over 15,000 invoices, require expert reports and discovery, and will take weeks to try. This will burden the parties with massive attorneys' fees, expert and trial costs. A favorable appellate ruling now would spare the parties and Court that time and expense.

## I.     "EXCEPTIONAL CIRCUMSTANCES" ARE PRESENT TO JUSTIFY HEARING THE APPEAL

Contrary to Debtors' assertion that Pepsi must demonstrate "exceptional circumstances" and also satisfy §1292 (see Opposition Brief pp.7, 17-18), satisfaction of all three requirements

---

[1] Capitalized terms used herein have meanings ascribed to them in Pepsi's Memorandum of Law in Support of its Motion [Dkt. No. 4] (cited herein as "Opening Brief").

constitutes "exceptional circumstances." *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *5 (S.D.N.Y. 2009) (granting interlocutory appeal without further discussion of "exceptional circumstances" where §1292 criteria satisfied). Generally, interlocutory appeal requires that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id.* at *5 (quoting *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 23 (2d Cir.1990)). Specifically, interlocutory appeal should be allowed when all three §1292 factors are present. *Id.* at *5. "[A]n interlocutory appeal is most appropriate where it will save the parties (and the court) from unnecessary, expensive, and protracted litigation." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 2012 WL 2952929, at *3 (S.D.N.Y. 2012). Here, interlocutory appeal is most appropriate because reversal will save the parties and court from protracted litigation.

## II.   THE ORDER INVOLVES CONTROLLING LEGAL QUESTIONS

In its Opening Brief, Pepsi designates three controlling questions of law implicated by the Order.  The Debtors argue no controlling question of law is present because (i) the Court resolved the motion on "the basis of established contract law" and therefore "it was unnecessary for the court to resolve the issue embedded in the three questions … that the Appellants present on appeal." (Opposition Brief p.8.) Thus, "the Bankruptcy Court did not: (i) rule on any of [the issues presented for appeal], [(ii)] did not ground its ruling on the SJ Motion in the concurrent standing of the Appellees and Committee; and (iii) did not conflate the Appellees and the Committee." (*Id.*) However, the Court could not have interpreted the contracts as it did unless the Debtors and the Committee had concurrent standing to bring the Preference Claims and ***explicitly relied*** on that concurrent standing in deciding the SJ Motion.

Immediately after interpreting part of the operative paragraph of the Tolling Agreements, the Bankruptcy Court discussed the concurrent standing of the parties.  (Tr. 13:14-14:3.)

2

The Bankruptcy Court's rationale also relied on experience as an attorney at Debevoise & Plimpton LLP (*See* Tr. 14:12-15:4), and the Court further explained the importance of concurrent standing to interpret the Tolling Agreements:

> If only the committee can bring the cause of action and the committee disagrees with the debtor and the lenders, the committee can just say well, we're the only ones who can bring the cause of action. So either, you know, it's our way or the highway. You don't have any right to bring the cause of action, and we're going to settle, and we're not going to bring it. So you know, it's like it undercuts the dynamic that all three need to be involved in the settlement, which is why you're tolling.

(Tr. 18:8-16.)

Although Debtors describe the Bankruptcy Court's interpretation of the Tolling Agreements as a "plain reading" (Opposition Brief pp.2-5), the analysis went beyond plain meaning:

> MR. FRANK: [I]t converts every tolling agreement into a cause of action preservation agreement, because suddenly the parties to the agreement become meaningless.
>
> THE COURT: Well, again, ***I think here that's where the context comes in***. The rationale behind *Caguas* doesn't really apply here, since the settlement authority -- I mean, if you were going to be in negotiations, right, your negotiations wouldn't bear fruit, unless the reviewing parties agreed. And so, the rationale that just because the -- ***the rationale that they're not parties, they shouldn't be allowed to bring the lawsuit, is really undercut by that, because in essence, this language would mean that, as interpreted.*** They gave up their right to be reviewing parties. It's meaningless. It's a meaningless right at that point.

(Tr. 17:9-19, emphasis supplied.)

Indeed, even the Debtors acknowledge that "the Bankruptcy Court's analysis of the Tolling Agreements was informed by their purpose and ***the context*** in which they were executed," and quotes the Court's statement that "[s]o that's how I look at this, just on the plain language ***in context***." (*See* Opposition Brief p.3, emphasis supplied.)

3

Simply stated, the Bankruptcy Court's "plain meaning" relied on context external to the Tolling Agreements and emerges from the parties' concurrent standing.  And while the Bankruptcy Court did not rely on the Debtors' arguments and came up with its own basis to deny the SJ Motion, it is incorrect to suggest that the Court sidestepped the designated appellate issues.  Indeed, given the Court's reliance on the "context" of concurrent standing, the designated issues are appropriate for appeal.

This Court has stated that a question is "controlling" where: "reversal of the [order] could result in dismissal of the action; reversal of the [order], even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Dev. Specialists*, 2012 WL 2952929, at *4 (*quoting Peters v. Jinkosolar Holding Co., Ltd.,* 2012 WL 946875, at *14 (S.D.N.Y. 2012).  This Court should allow interlocutory appeal because both the second and third criteria are present. A holding that the Debtors may not substitute for the Committee based on concurrent standing and common interest in the Preference Claims will significantly affect the remainder of this litigation.  It will also provide important precedent in the growing number of cases where courts authorize non-debtor parties to pursue estate causes of action by making the identity of all contracting parties clear— which is not the case following issuance of the Order.

Elimination of the Preference Claims, which are entirely separate from the State Claims, will streamline litigation and allow the parties and Court to focus on the State Claims as stand-alone actions. It will eliminate expert analysis and testimony on insolvency, the "ordinary course" between Pepsi and the Debtors, and the ordinary terms in their businesses. *See* 11 U.S.C. §547(c). Moreover, trial of the Preference Claims would require expert testimony on hypothetical chapter 7 liquidation of the Debtors' assets. *See* 11 U.S.C. §547(b)(5).

In contrast, the State Claims have entirely different elements, unlikely to require experts. The Debtors state that the State Claims "total in excess of $7 million.  They arise out of scores if not hundreds of transactions.  Discovery on those claims has required and will continue to require the production, review and analysis of hundreds of pages of documents."  (Opposition Brief p.15.) However, the Debtors fail to acknowledge that the ***Preference Claims*** involve ***$18 million*** paid on over 15,000 invoices discrete from the State Claims discovery, dwarfing the discovery and potential recovery on the State Claims. Favorable resolution of an interlocutory appeal would substantially streamline the litigation in terms of discovery, trial (or pre-trial practice), and recovery.

The Debtors *do* acknowledge "[t]he continued pendency of the accounts receivable claims indicates potential for significant pre-trial motion practice on those claims and a potential trial." (Opposition Brief p.15.)  This may have been intended to suggest that the State Claims have greater significance than they do, but it also suggests that pre-trial motions may obviate the need for trial on certain of these State Claims.  Regardless, a successful interlocutory appeal will resolve the Preference Claims and save many trial days and hundreds of thousands of dollars of litigation expense.

Although the Debtors argue "this Court will not be able to quickly and cleanly resolve this bankruptcy appeal without having to study the record of both the Adversary Proceeding and, more importantly, the Appellee's bankruptcy cases," and that "[t]he result would be a heavily fact-based analysis that is inappropriate for an interlocutory appeal" (Opposition Brief p.10), few facts need be reviewed and this matter may be decided quickly. As previously stated (Opening Brief p.6), this Court could rule after reviewing only the Tolling Agreements and Transcript.

Furthermore, while the Debtors argue that the appellate issue is too uniquely tied to its circumstances to be precedential (*See* Opposition Brief p.10), this Court's decision would have

5

great value to future litigants, no matter the outcome.   Evolving case law beginning with *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*, 779 F.2d 901, 904-05 (2d Cir. 1985) demonstrates that it is increasingly common in this circuit for creditors' committees and other non-debtors to bring estate causes of action. *See, e.g., In re Dewey & LeBoeuf LLP,* 2012 WL 5985445, at *5-7 (Bankr. S.D.N.Y. 2012).   Use of tolling agreements to allow time for settlement or other resolution without litigation is also common practice in civil litigation outside of bankruptcy. Many such agreements contain language similar to the Tolling Agreements, tolling all statutes of limitation applicable to any and all causes of action that the plaintiff might bring. *See, e.g.*, *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 217 (2d Cir. 1999) (quoting a tolling agreement providing that "[a]ll limitations periods which may be applicable to any Claim of any kind whatsoever *by Dauman, or any of his heirs or assigns,* against the Foundation, ... are hereby tolled ...." and finding that only the named parties to the agreement were bound by it) (emphasis in original).

*Caguas Cent. Sav. Bank v. U.S.*, 215 F.3d 1304, 1307 (Fed. Cir. 2000), involved a tolling agreement that provided "the running of the statute of limitations for all Goodwill Claims the RTC may possess shall be tolled from the date of this Agreement."   The court held the appellants were not third-party beneficiaries, stating that, "[w]e view the 'tolling agreement' as being strictly limited in its application to the parties," *Id.*  at 1308. Similarly, the agreement in *Resolution Trust Corp. v. Bonner*, 848 F. Supp. 96, 98-99 (S.D. Texas 1994), tolled statutes of limitations on "any claims or causes of action brought or to be brought by RTC."

Here, §2 of the Tolling Agreements is substantially similar to the *Warhol* and *Bonner* agreements. The *Warhol* agreement tolled "all limitations periods," *id.*, and, in pertinent part, tolls "all statutes of limitation," applicable to "any Claim of any kind whatsoever" by the plaintiff, (*Warhol*, 189 F.3d at 217), and §2 tolls the statutes applicable to "any Cause(s) of Action that the

Committee may bring against Creditors." However, unlike most civil litigation, the bankruptcy practice of concurrent standing allows distinct entities (here, the Committee and Debtors) to bring causes of action belonging to a third entity, the bankruptcy estate. Only the concurrent standing "context" allowed the Bankruptcy Court to extend the Tolling Agreements to the Debtors, even though they were not parties. If a bankruptcy court may include all concurrent-standing parties in the protections of a standard-language tolling agreement entered into by only one of them, future litigants need to know.

## III.   THERE IS ROOM FOR SUBSTANTIAL DIFFERENCE OF OPINION ON THESE FIRST IMPRESSION ISSUES

When a controlling question of law presents an issue of first impression, permission to appeal is often granted. *Enron*, 2009 WL 3349471 at *6 (citing *Klinghoffer,* 921 F.2d at 25). To the best of Pepsi's knowledge after thorough investigation, no other court has issued an opinion on the difficult questions implicit in the Bankruptcy Court's construction of the Tolling Agreement.

Further, room for substantial difference of opinion is indicated when the challenged decision appears to run contrary to years of established law. *Enron*, 2009 WL 3349471 at *7. The line of *STN* cases addressing the distinctions between a debtor and creditors committee, strongly suggest that a grant of concurrent standing, creating a common interest in estate causes of action, does not render debtor and committee functionally equivalent. *See, e.g.*, *Official Comm. of Equity Security Holders of Adelphia Commc'ns Corp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 544 F.3d 420, 424-25 (2d Cir. 2008) (revoking the creditors' concurrent standing after distinguishing the debtor); *see also Smart World Technologies v. Juno Online Services, Inc. (In re Smart World Technologies, Inc.)*, 423 F.3d 166 (2d Cir. 2005) (distinguishing between debtor and committee for purposes of settling estate cause of action).  The Bankruptcy

Court's contextual decision raises an issue of first impression that runs counter to years of established law and demonstrates substantial difference of opinion on whether debtor and creditors committee should be regarded as distinct entities.

## IV.   IMMEDIATE APPEAL WOULD ADVANCE TERMINATION OF THE LITIGATION

Whether the Bankruptcy Court ruled correctly is a question of law, even if, for the sake of argument, it is merely a matter of contract interpretation, as the Debtors contend. If this Court allows interlocutory appeal and reverses, that ruling disposes of the Preference Claims.

The Debtors argue "[i]f the Appellants are ultimately unsuccessful on their appeal of the SJ Motion, the Avoidance Claims will have to be litigated as if the appeal had not happened, adding to the duration of the Adversary Proceeding."  (Opposition Brief p.16).  However, this is true in most appeals of summary judgment denial.  Here, consideration of the potential impact on both parties heavily favors interlocutory appeal.

To allow appeal, with the potential holding that the Preference Claims are time-barred would eliminate discovery and trial on those counts. To require the parties (and the Bankruptcy Court) to complete discovery and trial on the Preference Claims, only to have Pepsi appeal the summary judgment denial after entry of a final order would be slower, more costly and would produce a less certain result.

A reversal means no trial on the Preference Claims, which are entirely different causes of action than the State Claims. (Opposition Brief p.17).  The amount of discovery and time to complete trial on those counts, which can even be litigated separately, is not at issue. Furthermore, both parties recognize that certain State Claims may be resolved through motion practice.  If the parties do try the State Claims, they would be assured a more efficient trial that does not place the

same heavy burden on the Bankruptcy Court presented by a multi-week trial closely examining

payment of over 15,000 invoices.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Pepsi's request for interlocutory appeal should be granted.

Dated: February 28, 2020                    Respectfully submitted,

                                             /s/ Jeffrey Chubak
                                             Jeffrey Chubak
                                             AMINI LLC
                                             131 West 35th Street, 12th Floor
                                             New York, New York 10001
                                             (212) 497-8247
                                             jchubak@aminillc.com
                                             - and -
                                             Joseph D. Frank (admitted *pro hac vice*)
                                             Jeremy C. Kleinman (admitted *pro hac vice*)
                                             FRANKGECKER LLP
                                             1327 West Washington Boulevard, Suite 5G-H
                                             Chicago, Illinois 60607
                                             (312) 276-1400
                                             jfrank@fgllp.com
                                             jkleinman@fgllp.com
                                             *Attorneys for the Defendants*

## **CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Rule 8013(f)(3)(C) because, excluding the parts of the document exempted by Rule 8015(g), this document contains 2598 words. Dated: February 28, 2020.

/s/ Jeffrey Chubak