UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,<br><br>Debtors.<br><br>PEPSICO, INC., *et al.*,<br><br>Appellants,<br><br>-against-<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*<br><br>Appellees. | Chapter 11<br>No. 15-23007-RDD<br>(Jointly Administered)<br><br><br>Bankruptcy Appeal<br>No. 20 Civ. 583 (CM)<br>(Jointly Administered)<br><br>Adv. Proc. No. 18-8245 (RDD) |

**ORDER DENYING MOTION FOR LEAVE TO TAKE INTERLOCUTORY APPEAL**

McMahon, C.J.:

The Great Atlantic & Pacific Tea Company, Inc., commonly known as the A&P, as well as its affiliated debtors (collectively, "A&P," "Debtors" or "Appellees"), declared bankruptcy in 2015. In connection with that proceeding, A&P filed an adversary complaint against PepsiCo, Inc.; Bottling Group, LLC; Frito-Lay North America, Inc.; Quaker Sales and Distribution, Inc.; and Muller Quaker Dairy, LLC (collectively, "Pepsi," the "Pepsi Entities" or "Appellants"). *See Great Atl. & Pac. Tea Co., Inc. v. PepsiCo, Inc. et al.*, Adv. Proc. No. 18-8245 (S.D.N.Y. Bankr. Apr. 16, 2018) (the "Adversary Proceeding).

Pepsi moved for summary judgment on four of A&P's claims in the Adversary Proceeding, arguing that the Debtors' claims under the United States Bankruptcy Code were time-barred. In an Order entered on January 2, 2020, the United States Bankruptcy Court of the

1

Southern District of New York, The Hon. Robert D. Drain presiding, denied Pepsi's motion, based on a set of Tolling Agreements that Pepsi had entered into with A&P's Official Committee of Unsecured Creditors (the "Committee"). (*See* Dkt. No. 5, Frank Decl. Ex. 3 (the "SJ Order")).

Pepsi now moves for leave to take an interlocutory appeal of Judge Drain's Order under 28 U.S.C. § 158(a)(3) and 28 U.S.C. § 1292. For the reasons that follow, Pepsi's motion is DENIED.

## BACKGROUND

Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code in this district on July 19, 2015. A&P continued to operate its business and manage its properties as debtor-in-possession, which included purchasing wholesale goods from the Pepsi Entities.

On July 24, 2015, The Office of the United States Trustee appointed the Committee pursuant to § 1102 of the Bankruptcy Code. On June 6, 2016, the Bankruptcy Court approved the Global Settlement Order approving the agreement between the Debtors and the Committee to grant the Committee standing to prosecute any potential avoidance actions available to the Debtors under Chapter 5 of the Bankruptcy Code. (*In re: Great Atlantic & Pacific Tea Co.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y. June 6, 2016), Dkt. No. 2868, ¶ 5). That order did not address the Debtors' standing to pursue the estate's avoidance claims.

The statute of limitations for any avoidance action brought on the estate's behalf against Pepsi would have expired two years after the Debtors sought relief from the bankruptcy court -- on July 17, 2017. *See* 11 U.S.C. § 546(a)(1)(A). However, the Committee entered into five agreements with the five Pepsi entities to toll the limitations period until April 16, 2018, so that the parties could "continue to investigate and potentially resolve any [avoidance actions] that the

Committee may otherwise commence against Pepsi without the need for litigation." (*See* Frank Decl. Ex. 1, hereinafter the "Tolling Agreements".)  Those tolling agreements were made "applicable to any Cause(s) of Action that the Committee may bring against Pepsi."  (*Id.* § 2.)

On the final day of the final tolling period, April 16, 2018, the Debtors initiated the Adversary Proceeding, claiming that Pepsi had taken advantage of A&P by seeking and obtaining preferential payments prior to the bankruptcy. (*See Great Atlantic & Pacific Tea Co., et al v. PepsiCo, Inc. et al*, No. 18-8245 (RDD) (Bankr. S.D.N.Y. Apr. 16, 2018), Dkt. No. 1.) On August 17, 2018, Debtors filed a Second Amended Complaint, pleading four claims seeking avoidance of those allegedly preferential payments under Sections 547 and 550 the Bankruptcy Code.  (*See* Frank Decl. Ex. 4, ¶¶ 53-82.)

Pepsi moved for summary judgment on the Debtors' avoidance claims on the grounds that the claims were time-barred. It argued that the Debtors were not parties to the Tolling Agreements.  Pepsi did not argue that the statute of limitations argument applied to the twenty-two state law claims, nor did Pepsi move for summary judgment on those claims.

Judge Drain denied Pepsi's motion, noting that the Debtors' claims were a subset of the "Cause[s] of Action that the Committee may bring against Pepsi," which the Debtors and the Committee enjoy concurrent standing to pursue, *cf. Commodore Int'l Ltd. v. Gould (In re Commodore Int'l. Ltd.)*, 262 F.3d 96, 97-98 (2d Cir. 2001). As a result, he concluded that the Debtors' claims were preserved by the Tolling Agreements.  The court reasoned that the Tolling agreements applied to the claims in the Debtors' adversary complaint, because the agreements covered "all of those types of causes of action that the [C]ommittee has standing to bring," while saying nothing about whether the Committee had to be the party bringing them.  (Frank Decl. Ex. 2, Hearing Tr. 13:14-21.)

3

However, the SJ Order did not rely solely on a plain language interpretation of the tolling provision. Judge Drain was also convinced that reading "Cause[s] of Action that the Committee may bring" in context made clear that the parties intended to preserve the Debtors' standing to pursue the estate's avoidance claims, for two reasons. First, the Global Settlement Order did not grant the Committee exclusive standing. Second, the "settlement purpose behind [the Tolling Agreements] . . . involves other parties, including the Debtors." (*Id.* 13:22-14:11.) In other words, Judge Drain concluded that the Tolling Agreements must have applied to the Debtors' avoidance claims, because (1) the agreements preserved claims that the Debtors retained standing to pursue, and (2) Pepsi only entered the agreements to facilitate a settlement that would ultimately depend upon the Debtors' approval. Therefore, the context of the Tolling Agreements put Pepsi on notice that Debtors retained their right to avoid their preferential payments to Pepsi.

Pepsi asks this Court for permission to appeal the SJ Order, on the ground that Judge Drain "erroneously relied on the Debtors and Committee's concurrent standing to pursue causes of action to transform a tolling agreement between Pepsi and the Committee into an agreement to toll the statute of limitations generally with respect to those causes of action, regardless of what party brings them." (Dkt. No. 4, Appellants' Br. at 1.) Pepsi claims that the SJ Order misapplies this Circuit's concurrent standing precedents to expand the protections of the Tolling Agreements to the non-party Debtors; it notes that no court has ever held that one of two parties with concurrent standing can enter an agreement that binds or benefits the other simply because the two parties have a common interest in the estate's claims.

According to Pepsi, because Judge Drain's interpretation of the contract language improperly merged the Debtors with the Committee and, "considered them one or the same legal entity when negotiating or contracting with third parties," (*id.* at 3), this Court is presented with

4

three questions of law appropriate for interlocutory review: (1) whether, as a matter of first impression, third parties dealing with either party that has concurrent standing "may fairly be charged with the knowledge they are actually dealing with both [parties with concurrent standing] as counterparties"; (2) whether, as a matter of first impression, a debtor may benefit from a contract entered into between a creditor committee and a third party, over the objection of the third party; and (3) whether the Bankruptcy Court erred in citing the holding of *In re Smart World Technologies, Inc.*, 423 F.3d 166 (2d Cir. 2005) – that the doctrine of derivative standing did not entitle a creditor to settle an estate cause of action over the debtor's objections (*id.* at 180) – to support the proposition that the Committee did not have unilateral authority to settle the claims references in the Tolling Agreements.

## DISCUSSION

### I. Legal Standard

Section 1292(b) "provides a means of appealing from interlocutory orders that are otherwise nonappealable, upon consent of both the district court and the court of appeals." *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 23 (2d Cir.1990). It says that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

\*3 28 U.S.C. § 1292(b) (numbering added); *see generally Williston v. Eggleston,* 410 F.Supp.2d 274, 276 (S.D.N.Y.2006); *Martens v. Smith Barney, Inc.,* 238 F.Supp.2d 596, 599 (S.D.N.Y.2002).

"In regard to the first prong, the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re*

5

*Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (internal quotation marks omitted). Regarding the third prong, an interlocutory appeal is most appropriate where it will save the parties (and the court) from unnecessary, expensive, and protracted litigation. *Williston,* 410 F.Supp.2d at 276 (quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 690 F. Supp. 170, 172 (S.D.N.Y.1987)) Analyses of the first and third prongs are related. The extent to which a question is "controlling" can be understood as a measure of its potential to materially advance the litigation; if the initial ruling erred in deciding a controlling question, then "reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue would materially affect the litigation's outcome." *Adelphia*, 333 B.R. at 658.

As for the second prong, the "substantial ground for difference of opinion" must arise out of genuine doubt as to the applicable legal standard relied on in the order. *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 673 (S.D.N.Y. 2011). Substantial ground exists if the issue is difficult and of first impression. *Id.*

A court certifying a decision for interlocutory appeal must be of the opinion that all three of these statutory conditions are met. Even when they are, district courts have "unfettered discretion to deny certification" in light of the strong bias in federal practice against interlocutory appeals. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* No. MDL 1358 (SAS), M 21-88, 2005 WL 39918, at *2 (S.D.N.Y. Jan. 6, 2005) (internal quotation marks omitted). That is because, "Appeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *Picard v. Katz,* 466 B.R. 208, 209 (S.D.N.Y.2012) (quoting *In re September 11 Litigation,* No. 21-MC-97 (AKH), 2003 WL 22251325, at *1 (S.D.N.Y. Oct. 1, 2003)). Thus, when exercising

its discretion, a District Court must also bear in mind that granting an interlocutory appeal under § 1292(b) is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir.1996).

**II.     An interlocutory appeal is not appropriate at this time.**

Pepsi's petition fails to meet any of the three requirements necessary to obtain interlocutory review.  Therefore, its motion for leave to appeal the SJ Order is denied.

a. Pepsi's petition does not identify a controlling question of law.

Pepsi argues that the SJ Order implicates three controlling questions of law: whether Pepsi should have known it was dealing with the Committee and the Debtors simultaneously when it negotiated the Tolling Agreements; whether the Debtors may benefit from the Tolling Agreements despite not being a party to those agreements; and whether the bankruptcy court erred by citing *Smart World* to conclude that the potential settlements referenced in the Tolling Agreements necessarily required the Debtors' input, and, thus, necessarily preserved their avoidance claims.

Each of these questions springs from the bankruptcy court's assertion – which Pepsi does not dispute – that debtors and creditors can enjoy concurrent standing to bring the same claims on the estate's behalf.  Because Judge Drain reached his conclusion about the Tolling Agreements by applying his view of concurrent standing to facts of this case, the SJ Order does not implicate any pure questions of law appropriate for interlocutory review.

The concept of concurrent standing derives from cases where courts conferred "derivative standing" on creditors by granting them the ability to step into the shoes of debtors who "unjustifiably failed to bring suit or abused [their] discretion in not suing." *In re Adelphia*

7

*Commc'ns Corp.*, 330 B.R. 364, 374 (S.D.N.Y. 2005).  As Judge Scheindlin summarized in *In re Adelphia Commc'ns Corp.*, 371 B.R. 660 (S.D.N.Y. 2007), *aff'd,* 544 F.3d 420 (2d Cir. 2008):

> "Three seminal cases in this Circuit laid the foundation for committees to acquire derivative standing to press claims on behalf of debtors' estates. They are: (i) *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes* [779 F.3d 901 (2d Cir. 1985); (ii) *In re Commodore International, Ltd.* [262 F.3d 96 (2d Cir. 2001)]; and (iii) *In re Housecraft Industries USA, Inc.* [310 F.3d 64 (2d Cir. 2002)]. The Second Circuit first recognized the doctrine of derivative standing in *STN*. There, the court held that although 'no explicit authority for creditors' committees to initiate [suit]' exists in the Code, an 'implied, but qualified' right exists under 11 U.S.C. §§ 1103(c)(5) and 1109(b) in cases where the debtor-in-possession has 'unjustifiably' failed to bring suit and a committee seeking standing obtains the approval of the court. In *Commodore,* the court extended the doctrine of derivative standing to apply in cases where the debtor-in-possession consents to a committee's maintenance of the claim. Finally, in *Housecraft,* the court held that bankruptcy courts may grant standing to a committee to sue as a co-plaintiff with the debtor-in-possession on behalf of the estate."

*Id.* at 666 (defined terms omitted).

Importantly, no case holds that once a creditor or a committee of creditors obtains standing, the Debtors' standing is extinguished.  As the Second Circuit noted in *In re Smart World Techs., LLC*, 423 F.3d 166, 174 (2d Cir. 2005), the rule that only the trustee, or a debtor-in-possession, may bring a motion for settlement, "is hardly surprising of the numerous provisions in the Bankruptcy Code establishing the debtor's authority to manage the estate and its legal claims." A debtor only loses its control over the estate's claims, and its concomitant standing to pursue them, when its conduct "is unjustifiable or unreasonable," as in *STN*. *Adelphia*, 371 B.R. at 671.  Pepsi has not challenged the Debtors' standing on either of those grounds.

When interpreting the Global Settlement Order and the Tolling Agreements, Judge Drain recognized that *STN*, *Commodore*, and *Housecraft* allow for concurrent standing in this case, because: (i) Pepsi did not argue that the Debtors had acted unjustifiably or unreasonably; (ii) the holding in *Commodore* allows the Debtors to consent to the Committee's standing; and (iii) the

8

holding in *Housecraft* supports the conclusion that the Committee's standing does not abrogate the Debtors' standing.

Given this backdrop, and Pepsi's concession that concurrent standing is available under the controlling precedents, the issue is whether Judge Drain's correctly interpreted the Tolling Agreements – specifically, their use of the phrase "applicable to any Causes of Action that the Committee may bring" – to conclude that the parties intended to toll the statute with respect to "claims" that could be brought by one of two parties, without regard to which one actually ended up asserting the claim. Unfortunately for Pepsi, one can read the relevant phrase in two different ways – as applying to the causes of action themselves, or to the causes of action only when brought by the Committee. In other words, there is an ambiguity in the language chosen by the parties.

Had the parties rephrased this clause to read "applicable to any Causes of Action when asserted by the Committee," or something similar, there would be no question that the Tolling Agreement did not apply to Pepsi. But one perfectly natural reading of the words used by the parties is that Causes of Action were tolled – with the words "the Committee may bring" being used to describe the causes of action as to which the tolling agreement applied, rather than as a limitation on to which party plaintiff the toll would apply. The fact that the Debtor was not party to the Tolling Agreement is some evidence that Pepsi's reading of the Agreement is correct, but it is not dispositive – at least, not in the context of concurrent standing.

Dueling contract interpretations involving ambiguous language cannot constitute a "controlling question," because settling such disputes "requires an examination of the entire . . . agreement and potentially any evidence of the parties' intent." *In re Anderson*, 550 B.R. 228,

9

237 (S.D.N.Y. 2016) (denying petition for interlocutory review of bankruptcy court's interpretation of arbitration provision).

Therefore, each of Pepsi's proposed "controlling questions" – its understanding of the Tolling Agreements, any potential benefits that the Debtors' derived from those agreements, and the limitations on the Committee's settlement authority – raises an issue that is not a proper subject for interlocutory review, because each depends upon Judge Drain's interpretation that the Tolling Agreements preserved the Debtors' avoidance claims.

      b. <u>Granting interlocutory review would not materially advance the litigation of the adversary complaint</u>.

Nor would resolution of an interlocutory appeal in Pepsi's favor materially advance this litigation. Even if this Court dismisses the avoidance claims, the bankruptcy court can retain jurisdiction over the common law claims until they are ready for trial. *See Stern v. Marshall*, 564 U.S. 462, 471, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) (holding that bankruptcy courts are not barred from "proposing findings of fact and conclusions of law"). Nor do interlocutory appeals "materially advance the termination of this litigation" when the Debtors' common law claims will continue regardless of the disposition of the issues on appeal. *See Picard v. Madoff*, 464 B.R. 578, 586–87 (S.D.N.Y. 2011); *Bishop v. Best Buy, Co.,* No. 08 Civ. 8427(LBS), 2011 WL 4011449, at *15 (S.D.N.Y. Sept. 8, 2011).

      c. <u>Whether Pepsi's motion presents a substantial ground for difference of opinion is irrelevant.</u>

Pepsi's petition may ultimately implicate a "substantial ground for difference of opinion," but that can only be determined after the bankruptcy court fully develops the record. Moreover, because Pepsi has not satisfied either the first or the third prong of the tripartite standard for certifying an order for interlocutory appeal, even if on the present record Pepsi had presented a

substantial ground for difference of opinion, the case would not be certified for interlocutory appeal.

## CONCLUSION

For the reasons stated, the Order of the Bankruptcy Court (*Great Atlantic & Pacific Tea Co., et al v. PepsiCo, Inc. et al*, No. 18-8245 (RDD) (Bankr. S.D.N.Y. Apr. 16, 2018), Dkt. No. 49) is AFFIRMED.

This constitutes the decision and order of the Court.  It is a written opinion.  The Clerk of Court is respectfully directed to close this matter on the Court's docket.

Dated:  May 18,  2020

New York, New York

_____

Chief Judge

BY ECF TO ALL PARTIES

11